IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERYL MILLER | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| VS. | ) | |
| | ) | |
| WILLIAM BEAUMONT HOSPITAL dba | ) | HON. |
| BEAUMONT HEALTH SYSTEM | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

PLAINTIFF, Sheryl Miller, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT William Beaumont Hospital dba Beaumont Health System.

## JURY DEMAND

COMES NOW PLAINTIFF, Sheryl Miller, and hereby makes her demand for trial by jury.

## JURISDICTION

1.      Plaintiff Sheryl Miller was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2.      Defendant William Beaumont Hospital dba Beaumont Health System is Michigan's largest health care system. The organization has net revenue is $4.7 billion. With eight hospitals, 155 outpatient locations, nearly 5,000 physicians and 33,000 employees,

1

Beaumont's actions affect residents throughout the community and beyond. Beaumont Health is headquartered at 26901 Beaumont Blvd., Southfield, MI 48033. Beaumont Hospital, Taylor is a 180-bed hospital located at 10000 Telegraph Road, Taylor, MI. Beaumont Hospital, Trenton is located at 5450 Fort Street, Trenton, MI.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## **VENUE**

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## **STATEMENT OF FACTS**

6.      On June 5, 2017, Defendant Beaumont Hospital hired Plaintiff Sheryl Miller as a Patient Access Specialist at Beaumont's Taylor Hospital.

7.      Defendant paid Ms. Miller about $16.00 an hour.

8.      On January 13, 2019, Ms. Miller transferred to Beaumont's Trenton Hospital.

9.      Ms. Miller worked in the Breast Care Center.

10.     Ms. Miller transferred to the Breast Care Center because this facility offered a day shift, from 7 a.m. to 3:30 p.m., which Ms. Miller desired.

11.    Ms. Miller registered patients as a Patient Access Specialist. She interacted with patients to obtain accurate identifying and biographical information and following the appropriate check-in processes.

12.    Ms. Miller suffers from a chronic or long-term health condition – asthma and chronic obstructive pulmonary disease ("COPD").

13.    The Centers for Disease Control and Prevention ("CDC") state that people with COPD are at an increased risk from COVID-19. Thus, the CDC considers people with COPD a high-risk group.

14.    The CDC states that people with moderate-to-severe asthma or uncontrollable asthma are more likely to be hospitalized from COVID-19.

15.    Asthma is a chronic or long-term health condition covered by the Family Medical Leave Act ("FMLA").

16.    In or around April or May 2019, Ms. Miller turned in a new form for FMLA.

17.    On or about May 31, 2019, Ms. Miller suffered an asthma attack.

18.    Around the same time, Ms. Miller spoke to her supervisor and informed her that she was having medical problems (asthma) and would not be able to come in to work.

19.    Ms. Miller provided Defendant Beaumont enough time, as requested by Beaumont policy, to cover her shift.

20.    On May 31, 2019, Ms. Miller took a day off work for her own medical condition - asthma.

21.    On or about June 1, 2019, Ms. Miller turned in her FMLA form.

22.    On or about June 3, 2019, Defendant's supervisor denied Ms. Miller's FMLA because Ms. Miller did not say the words "FMLA" when requesting time off.

3

23.     Defendant's supervisor, Roseanna Von Linsowe marked Ms. Miller's absence "unexcused."

24.     On or about June 3, 2019, Ms. Miller emailed Defendant's Leave Coordinator, Monica Holbrook, to complain about Defendant retaliating against her for taking FMLA.

25.     Ms. Miller requested Defendant's Leave Coordinator Holbrook remove the unexcused absence from her employment record.

26.     Leave Coordinator Holbrook told Supervisor Von Linsowe she could not mark Ms. Miller's FMLA absences as "unexcused."

27.     After this, Supervisor Von Linsowe suddenly turned hostile toward Ms. Miller. Von Linsowe used to talk and share ideas with Ms. Miller. Now, it seemed like Von Linsowe could not stand the sight of Ms. Miller. The shift happened soon after Ms. Miller complained to Leave Coordinator Holbrook about Von Linsowe's retaliation. Von Linsowe stopped speaking directly to Ms. Miller and gave Ms. Miller an attitude.

28.     In addition to the hostile attitude, Von Linsowe changed Ms. Miller's schedule. When Ms. Miller transferred to Trenton, Defendant promised Ms. Miller would be working every other Saturday in the MOB.

29.     Shortly after complaining to Leave Coordinator Holbrook, Von Linsowe transferred Ms. Miller to the emergency room. Ms. Miller had a consistent schedule up to this point. She worked 7 a.m. to 3:30 p.m., with Wednesday off every week and Defendant required her to work Saturdays. Now, Supervisor Von Linsowe forced Ms. Miller to work in the ER rather than the Breast Care Center.

30.     On or about September 10, 2019, Ms. Miller emailed Defendant's Director of Patient Access, Beth Karr, regarding the schedule change.

4

31.     On or about September 13, 2019, Ms. Miller again emailed Director Karr about the schedule change. This time, Ms. Miller included Supervisor Von Linsowe and Katie Williams on the email. Ms. Miller requested to work in the MOB half days on Saturday. Ms. Miller had worked those half days when she was transferred and expected to get those hours back in MOB when Defendant decided to reopen the MOB.

32.     On or about September 16, 2019, Ms. Miller emailed Union Representative Geri Souve because she had not heard back from anyone about her MOB hours. In fact, Defendant had scheduled another person to work Ms. Miller's previous shift in the MOB. In response, Ms. Souve set up a meeting with Director Karr to go over several issues, including Supervisor Von Linsowe's hostile attitude and behavior along with the schedule changes.

33.     Following the meeting, Supervisor Von Linsowe's attitude and behavior improved a little bit. However, after a few weeks, Supervisor Von Linsowe's hostile attitude and behavior returned.

34.     Supervisor Von Linsowe's hostile attitude caused Ms. Miller stress, anxiety, worry, depression, and frustration. She no longer looked forward to going to work out of fear of running into Supervisor Von Linsowe.

35.     On or about December 5, 2019, Ms. Miller underwent a medical procedure (surgery). She took FMLA for her own medical condition. Ms. Miller was off work for six weeks.

36.     On or about January 13, 2020, Ms. Miller returned to work.

37.     On or about January 15, 2020, Supervisor Von Linsowe pulled Ms. Miller aside at work and accused her of not registering enough patients. Ms. Miller estimates she registered about 90 patients a day. Supervisor Von Linsowe told Ms. Miller that if she did not get her

5

numbers up, Supervisor Von Linsowe would remove her from her position. Ms. Miller explained that she had issues with the insurance company.

38.     In or around March 2020, the COVID-19 pandemic hit Michigan. Defendant Beaumont Hospital saw a dramatic increase in COVID-19 patients. Elective services (including the Breast Care Center) were shut down and all Patient Access Specialists were moved to the Trenton Hospital's Main Registration (which included the Emergency Center).

39.     On or about March 23, 2020, Defendant forced Ms. Miller to work in Main Registration. This exposed Ms. Miller to patients suspected of being infected with the COVID-19 virus. Ms. Miller registered patients that were infected with COVID.

40.     On or about March 23, 2020, Supervisor Von Linsowe emailed the staff to inform them, effective immediately, Patient Access Registration ("PAR") will no longer use the N95 masks as they are not in direct contact with Covid-19 patients. The masks were to be reserved for medical staff on the front lines. Defendant supplied the department with surgical masks, gowns, and gloves for protection.

41.     The pandemic was very serious. Ms. Miller had purchased her own supply of N95 masks. Due to her underlying health condition (asthma), she did not feel comfortable working in Main Registration without an N95 mask.

42.     On or about March 24, 2020, Ms. Miller expressed to Supervisor Von Linsowe, that due to her underlying health conditions, she did not feel comfortable working in Main Registration. Ms. Miller requested Defendant Beaumont allow her to wear her own N95 mask when interacting with patients.

43.     On or about March 24, 2020, Supervisor Von Linsowe denied Ms. Miller's request for accommodation to wear an N95 mask. She reiterated that N95 masks were only for

medical staff on the front lines. Ms. Miller explained that she had her own supply of N95

masks. She told Supervisor Von Linsowe that wearing her own mask would not cause any

burden on Defendant Beaumont.

44.    Rather than have a conversation with Ms. Miller to determine if Ms. Miller could

perform the essential functions of her job with her own N95 mask, Supervisor Von Linsowe

told Ms. Miller to take unpaid leave or use paid time off ("PTO").

45.    Around this same time in March 2020, Ms. Miller earned her last full-pay check

before taking PTO. Defendant Beaumont paid Ms. Miller $2,396.25 for two weeks of work. The

pay begin date was March 8 through pay end date March 21,2020. On average, Ms. Miller

earned about $2,396.25 every two weeks prior to the COVID pandemic.

46.    On or about March 25, 2020, Defendant held an in-service meeting on the use

and purpose of the N-95 mask. Jordan Bosco from Infection Prevention & Epidemiology spoke

at the in-service meeting. Bosco told the staff that they did not need an N95 mask. Nevertheless,

given her status as high-risk, Ms. Miller preferred to wear her own N95 mask while working

with COVID-19 patients in Defendant's hospital.

47.    On or about March 26, 2020, Ms. Miller's doctor, Dr. Vijay Kahnna, took her off

work because she was too high risk to work at Beaumont with the disease going on and

Beaumont not offering N95 masks.

48.    On or about March 26, 2020, other employees at Defendant's hospital

complained to Defendant about their working environment. Specifically, employees voiced

concern about the area they were working in for curbside screening, the Ante room. These

employees were on the front line and being exposed to potential COVID-19 transmission.

7

49.     In response, Defendant changed the location of registration. Staff would no longer have contact with the clinical staff. Registration was moved to the ambulance entrance and information to clinical staff would be passed under the door of the Decon room. The problem with this solution is the clinical staff did not follow the directive. Clinical staff routinely opened the door to pass information. Moreover, the information being handed to the other employees was handled by patients suspected of having COVID-19. If an ambulance pulled up, staff could remove themselves by entering a code into the key pad and moving into the hallway, six feet from the patient. However, in actuality, this was not a practical solution.

50.     On or about March 27, 2020, Ms. Miller emailed Leave Coordinator Holbrook her FMLA form for the year, along with a handwritten form to be off on FMLA due to the COVID-19 virus. Ms. Miller also requested clarification whether she would be paid while on FMLA through short-term disability due to COVID-19. She wanted clarification on her first day off work so Defendant would not try to fire her for being a "no show." Leave Coordinator Holbrook replied that her first day off counted as her first seven days, and short-term disability kicked in on the eighth day.

51.     Later that day, Supervisor Von Linsowe emailed the entire staff to inform them about Ms. Miller's FMLA absence.

52.     On or about March 28, 2020, Defendant's Human Resource department ("Marianne," last name unknown) approved Ms. Miller's FMLA. However, Marianne left Ms. Miller a voicemail stating that the FMLA was not in the system yet.

53.     Ms. Miller feared Defendant would try to fire her for unexcused absences. She emailed Marianne to ask about using her PTO prior to the approval.

54.     On or about March 30, 2020, Defendant received Ms. Miller's FMLA paperwork with all the information it needed. Defendant's leave specialist advised Ms. Miller rhat at the point her doctor took her off work (March 26, 2020) is the date she did not need to come into work.

55.     On or about March 30, 2020, Shauna Willette emailed the staff PPE guidelines, per the CDC. She informed the staff this had not changed since the Infectious Control department came to talk with them. She reminded staff to change gloves, wash hands, and use hand sanitizer.

56.     On or about April 4, 2020, Defendant paid Ms. Miller about $421.89. Ms. Miller was unable to collect unemployment because Defendant forced her to use her PTO. This was about $1, 200 in wage loss.

57.     On or about April 18, 2020, Defendant paid Ms. Miller about $436.62 from PTO hours used. Defendant paid $575.25 in short-term disability benefits. Ms. Miller's PTO dwindled from 39.9 hours to 9.7 hours.

58.     On or about May 29, 2020, Defendant centralized registration. Every employee needed to know all areas of registration, especially radiology. Effective June 1, staff would be rotating.

59.     On or about June 8, 2020, Ms. Miller emailed her return to work date from her physician to Leave Coordinator Holbrook.

60.     On or about June 11, 2020, Ms. Miller contacted Supervisor Von Linsowe and informed her that her doctor would release her back to work on July 6, 2020.

61.     Ms. Miller expected to be assigned to the Breast Care Center working 7 a.m. to 3:30 p.m. upon her return. This was her shift and assignment prior to taking FMLA. Supervisor

Von Linsowe explained the PAR moved to centralized registration and they were not back to full staff. Further, scheduling would be based upon seniority. She informed Ms. Miller of the shifts available to her upon her return based upon her seniority.

62.     Supervisor Von Linsowe gave Renee Labo the shift and assignment Ms. Miller worked prior to taking FMLA. Ms. Labo was not required to rotate.

63.     On or about June 12, 2020, Ms. Miller emailed Leave Coordinator Holbrook because Supervisor Von Linsowe's actions did not make sense. Ms. Miller complained that Supervisor Von Linsowe was retaliating against her because she had asthma, required an accommodation, needed to take FMLA, and complained about prior harassment from Von Linsowe.

64.     In or about the middle of June 2020, Ms. Miller applied for intermittent FMLA for her asthma.

65.     On or about June 21, 2020, Defendant's Leave Management Specialist Holbrook, approved Ms. Miller's intermittent FMLA from April 29, 2020 – April 28, 2021. Ms. Miller required one day leave per episode, about two to three times a month. Each time Ms. Miller was absent during the approved FMLA, she called her department and stated in a reasonable time frame, "I'm calling FMLA due to asthma."

66.     On or about June 23, 2020, Supervisor Von Linsowe sent a "huddle statement" about wearing masks.

67.     On or about July 6, 2020, Ms. Miller returned to work.

68.     Ms. Miller lost about $15,575.62 in past wages because Defendant Beaumont refused to accommodate her asthma and forced her take unpaid leave. Ms. Miller also used up all of her PTO.

10

69.    But for Defendant Beaumont refusing to accommodate Ms. Miller, she would not have required STD.

70.    But for Defendant Beaumont refusing to accommodate Ms. Miller, she would not have required unemployment benefits.

71.    Since her return to work, Supervisor Von Linsowe's hostile attitude toward Ms. Miller returned. Supervisor Von Linsowe's actions caused Ms. Miller to suffer panic attacks.

72.    In or around August 2020, the EEOC met with Supervisor Von Linsowe at Defendant's hospital.

73.    After the EEOC visit, Supervisor Von Linsowe's harassment and bullying became so hostile, it forced Ms. Miller to flee into a bathroom crying. Co-worker "Jessica" (last name unknown) witnessed this interaction between Von Linsowe and Ms. Miller. Jessica followed Ms. Miller into the bathroom to check on her. Jessica hugged Ms. Miller and told her to not let Supervisor Von Linsowe bother her.

74.    Other co-workers, including but not limited to, Tina, Tammy, and Adriana (last names unknown) also witnessed Supervisor Von Linsowe bully and harass Ms. Miller.

75.    On or about August 9, 2020, Ms. Miller began taking medication for panic attacks. She spent about $10 for every refill. She took them on a regular basis until December 2020.

76.    On or about August 18, 2020, Ms. Miller had a "1st Step Meeting" with Director Karr. The meeting took place in Karr's office around 1 p.m.

77.    On or about October 7, 2020, Supervisor Von Linsowe cancelled an interview with Ms. Miller regarding an open position. She stated there was not an available office for a

private interview since "Beth" was in a meeting all day and could not use her office. Von Linsowe promised to send an invite for another day.

78.     On or about October 23, 2020, Director Karr and Supervisor Von Linsowe sent a Huddle email apologizing that they were unable to get a huddle together for the week. She announced an N-95 mask change: st the beginning of each shift, the Complete Registration person and Triage person needed to get an N-95 mask from the Charge Nurse. They were not to be worn at desks, only at bedside. They were to be disposed of at the end of the shift. The Joint Commission was to be there the next week, and Defendant advised to "prepare your area," and "wear proper PPE at all times."

79.     On or about November 3, 2020, Defendant wrongfully accused Ms. Miller of taking 54 hours of FMLA.

80.     On or about November 13, 2020, Defendant Beaumont submitted a Position Statement in response to Ms. Miller's EEOC charge alleging disability discrimination, failure to accommodate, and retaliation.

81.     On or about December 3, 2020, Supervisor Von Linsowe accepted a full-time Benefit Advisor position. She was to continue to assist with PAR supervisor duties until Defendant could train Renee Carr.

82.     On or about August 12, 2021, Ms. Miller called in FMLA Intermittent Leave for her asthma.

83.     Manager Renee Carr contacted HR Cheryl Cobbs and falsely accused Ms. Miller of calling off for her husband.

84.    Ms. Miller explained to HR Cobbs that Manager Carr was wrong and submitted documents the following day to prove it.

85.    On or about August 16, 2021, HR Cobbs emailed Ms. Miller to explain that her request for FMLA on August 4, 2021 was for her husband, but that her FMLA request expired the same day. She requested that Ms. Miller's husband's physician complete a medical form and return it in two days.

86.    Again, Ms. Miller explained the leave was for her asthma, not her husband. Cobbs escalated the situation to HR representative, Chavonia Wise. Ms. Miller's leave was being investigated. Ms. Miller worried this would result in points for missing work.

87.    Ms. Miller feared Defendant was attempting to fire her in retaliation for filing a complaint with the EEOC, taking FMLA, having a disability and requesting an accommodation.

88.    On or about September 21, 2020, Defendant Beaumont falsely accused Ms. Miller of going into a patient's file and violating HIPAA. Union Representative Souve attended this meeting and asked for proof. Defendant Beaumont refused to substantiate its claim.

89.    Because Ms. Miller was worried Defendant Beaumont would fire her, this caused Ms. Miller stress, worry, anxiety, depression, loss of enjoyment of life, frustration, anger. She lost her appetite, had trouble sleeping. Her stomach hurt and her head ached.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

90.    Ms. Miller exhausted her administrative remedies and satisfied this jurisdictional prerequisite.

91.     Ms. Miller filed a Charge of Discrimination with the Equal Employment

Opportunity Commission regarding Defendant's discriminatory conduct: Charge No. 471-2020-

03874.

92.     The Equal Employment Opportunity Commission issued a Notice of to Sue letter

on June 30, 2021.

## COUNT I

**Violation of the Americans with Disabilities Act – Failure to Accommodate**

93.     Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding

paragraphs.

94.     Ms. Miller brings this suit under a federal law called the Americans with

Disabilities Act ("ADA").

95.     Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not

accommodating her disability.

96.     Under the ADA, to "accommodate" a disability is to make some change that will

let a person with a disability perform the job. An accommodation is "reasonable" if it is effective

and its costs are not clearly disproportionate to the benefits it will produce.

97.     A reasonable accommodation may include a change in such things as ordinary

work rules, facilities, conditions, or schedules.

98.     Once an employer is aware of an employee's disability and an accommodation

has been requested, the employer must discuss with the employee whether there is a reasonable

accommodation that would permit her to perform the job. Both the employer and the employee

must cooperate in this interactive process in good faith.

99.    At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

100.    At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

101.    At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

102.    Ms. Miller was an individual with a disability within the meaning of 42 U.S.C § 12102, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

103.    Ms. Miller's disability is asthma and COPD.

104.    Ms. Miller requested to wear her own N95 mask while working with Covid-19 patients at work.

105.    At all times relevant hereto, Defendant Beaumont Hospital had a duty under the ADA to accommodate Ms. Miller for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes, but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or transferring Ms. Miller to an available position.

106.    At all times relevant hereto, Defendant Beaumont Hospital could have accommodated Ms. Miller's disability without suffering an undue hardship.

15

107.    Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to her reasonable accommodation request.

108.    At all relevant times hereto, Defendant Beaumont Hospital had a duty under the ADA not to discriminate against Ms. Miller with respect to compensation or terms, conditions, or privileges of employment because of a disability.

109.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Miller with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Ms. Miller for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Ms. Miller, in retaliation for her requesting an accommodation.

110.    Notwithstanding said duties as set forth above, Defendant Beaumont Hospital discriminated against Ms. Miller because of her disability.

111.    Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable accommodation.

112.    Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask, forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and changed her assignment and shift.

113.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

114.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer physical pain and suffering,

including but not limited to headaches, tightness in her neck, stomach aches, elevated blood pressure, and insomnia.

115.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

116.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

## COUNT II

**Violation of the Michigan Persons with Disabilities Act – Failure to Accommodate**

117.     Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

118.     Ms. Miller brings this suit under the Michigan Persons with Disabilities Act ("PDCRA"), MCL § 37.1201, *et seq.*

119.     Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not accommodating her disability.

120.     At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the PDCRA.

121.     At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the PDCRA.

122.     At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to the PDCRA who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

17

123.    Ms. Miller was an individual with a disability within the meaning of the PDCRA, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

124.    Ms. Miller's disability is asthma and COPD.

125.    Ms. Miller requested to wear her own N95 mask while working with Covid-19 patients at work.

126.    At all times relevant hereto, Defendant Beaumont Hospital had a duty under the PDCRA to accommodate Ms. Miller for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes, but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or transferring Ms. Miller to an available position.

127.    At all times relevant hereto, Defendant Beaumont Hospital could have accommodated Ms. Miller's disability without suffering an undue hardship.

128.    Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to her reasonable accommodation request.

129.    At all relevant times hereto, Defendant Beaumont Hospital had a duty under the PDCRA not to discriminate against Ms. Miller with respect to compensation or terms, conditions, or privileges of employment because of a disability.

130.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Miller with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Ms. Miller for employment in any way which

deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Ms. Miller, in retaliation for her requesting an accommodation.

131.    Notwithstanding said duties as set forth above, Defendant Beaumont Hospital discriminated against Ms. Miller because of her disability.

132.    Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable accommodation.

133.    Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask, forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and changed her assignment and shift.

134.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

135.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer physical pain and suffering, including but not limited to headaches, tightness in her neck, stomach aches, elevated blood pressure, and insomnia.

136.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

137.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

**COUNT III**

**Violation of the Family and Medical Leave Act – Interference and Retaliation**

138.    Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

139.    At all relevant times, Ms. Miller was Defendant's employee within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

140.    At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the FMLA, 29 U.S.C. § 2601, *et seq.*

141.    Ms. Miller fell within the protection of the FMLA as a person with a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

142.    At all relevant times, Ms. Miller suffered from asthma that required continuing treatment from a healthcare provider.

143.    Under the FMLA, Defendant Beaumont Hospital had an obligation to provide Ms. Miller with up to 12 weeks of leave for a serious health condition which rendered Ms. Miller unable to perform the functions of her position.

144.    In addition, under the FMLA, Defendant Beaumont Hospital had an obligation to provide Ms. Miller with ability to take her leave time on an intermittent or reduced leave schedule. 29 U.S.C. § 2612(b).

145.    In addition, Defendant Beaumont Hospital is prohibited under FMLA from retaliating against Ms. Miller for requesting and/or taking FMLA leave.

146.    Notwithstanding Defendant's duties as set forth above, Defendant Beaumont Hospital willfully violated the FMLA by marking Ms. Miller's FMLA absences as "unexcused," Supervisor Von Linsowe harassing, bullying, ignoring, and giving Ms. Miller an attitude, altering Ms. Miller's assignment and shift, forcing Ms. Miller to take unpaid leave, refusing to

accommodate Ms. Miller's disability, threatening to fire Ms. Miller if she did not get her registration numbers up, falsifying the number of FMLA hours Ms. Miller used, and falsely accusing Ms. Miller of calling off on FMLA for her husband's medical condition.

147.    As a direct and proximate result of Defendant Beaumont's violation of FMLA and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

148.    As a direct and proximate result of Defendant Beaumont's violation of FMLA and retaliation, Ms. Miller has suffered and will continue to suffer physical pain and suffering, including but not limited to headaches, tightness in her neck, stomach aches, elevated blood pressure, and insomnia.

149.    As a direct and proximate result of Defendant Beaumont's violation of FMLA and retaliation, Ms. Miller has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

150.    As a direct and proximate result of Defendant Beaumont's violation of FMLA and retaliation, Ms. Miller required medical care.

## COUNT IV

### Violation of the Americans with Disabilities Act – Retaliation

151.    Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

152.    Ms. Miller brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

21

153.     Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not accommodating her disability.

154.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

155.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

156.     Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

157.     At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

158.     At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

159.     At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

160.     Ms. Miller was an individual with a disability within the meaning of 42 U.S.C § 12102, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

161.    Ms. Miller's disability is asthma and COPD.

162.    Ms. Miller requested to wear her own N95 mask while working with Covid-19 patients at work.

163.    At all times relevant hereto, Defendant Beaumont Hospital had a duty under the ADA to accommodate Ms. Miller for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes, but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or transferring Ms. Miller to an available position.

164.    At all times relevant hereto, Defendant Beaumont Hospital could have accommodated Ms. Miller's disability without suffering an undue hardship.

165.    Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to her reasonable accommodation request.

166.    At all relevant times hereto, Defendant Beaumont Hospital had a duty under the ADA not to discriminate against Ms. Miller with respect to compensation or terms, conditions, or privileges of employment because of a disability.

167.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Miller with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Ms. Miller for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Ms. Miller, in retaliation for her requesting an accommodation.

168.     Notwithstanding said duties as set forth above, Defendant Beaumont Hospital discriminated against Ms. Miller because of her disability.

169.     Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable accommodation.

170.     Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask, forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and changed her assignment and shift.

171.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

172.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

## COUNT V

### Violation of the Michigan Persons with Disabilities Act – Retaliation

173.     Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

174.     Ms. Miller brings this suit under the Michigan Persons with Disabilities Act ("PDCRA"), MCL § 37.1201, *et seq.*

175.     Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not accommodating her disability.

176.     At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the PDCRA.

24

177.　　At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the PDCRA.

178.　　At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to the PDCRA who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

179.　　Ms. Miller was an individual with a disability within the meaning of the PDCRA, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

180.　　Ms. Miller's disability is asthma and COPD.

181.　　Ms. Miller requested to wear her own N95 mask while working with Covid-19 patients at work.

182.　　At all times relevant hereto, Defendant Beaumont Hospital had a duty under the PDCRA to accommodate Ms. Miller for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes, but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or transferring Ms. Miller to an available position.

183.　　At all times relevant hereto, Defendant Beaumont Hospital could have accommodated Ms. Miller's disability without suffering an undue hardship.

184.　　Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to her reasonable accommodation request.

25

185.     At all relevant times hereto, Defendant Beaumont Hospital had a duty under the PDCRA not to discriminate against Ms. Miller with respect to compensation or terms, conditions, or privileges of employment because of a disability.

186.     At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Miller with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Ms. Miller for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Ms. Miller, in retaliation for her requesting an accommodation.

187.     Notwithstanding said duties as set forth above, Defendant Beaumont Hospital discriminated against Ms. Miller because of her disability.

188.     Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable accommodation.

189.     Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask, forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and changed her assignment and shift.

190.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

191.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

## COUNT VI

**Violation of the Americans with Disabilities Act – Disability Discrimination**

26

192.     Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

193.     Ms. Miller brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

194.     Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not accommodating her disability.

195.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

196.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

197.     Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

198.     At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

199.     At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

200.     At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

27

201.    Ms. Miller was an individual with a disability within the meaning of 42 U.S.C §

12102, in that she had a physical impairment that substantially limits one or more of her

major life activities, who with or without accommodation could perform the essential

functions of her job with Defendant.

202.    Ms. Miller's disability is asthma and COPD.

203.    Ms. Miller requested to wear her own N95 mask while working with Covid-19

patients at work.

204.    At all times relevant hereto, Defendant Beaumont Hospital had a duty under the

ADA to accommodate Ms. Miller for purposes of employment unless the accommodation

would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes,

but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or

transferring Ms. Miller to an available position.

205.    At all times relevant hereto, Defendant Beaumont Hospital could have

accommodated Ms. Miller's disability without suffering an undue hardship.

206.    Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of

Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to

her reasonable accommodation request.

207.    At all relevant times hereto, Defendant Beaumont Hospital had a duty under the

ADA not to discriminate against Ms. Miller with respect to compensation or terms,

conditions, or privileges of employment because of a disability.

208.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms.

Miller with respect to her employment, compensation or terms, conditions, or privileges

of employment, or to limit, segregate, or classify Ms. Miller for employment in any way

which deprived or tended to deprive her of employment opportunities or otherwise

adversely affect the employment status of Ms. Miller, in retaliation for her requesting an

accommodation.

209.     Notwithstanding said duties as set forth above, Defendant Beaumont Hospital

discriminated against Ms. Miller because of her disability.

210.     Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable

accommodation.

211.     Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask,

forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and

changed her assignment and shift.

212.     As a direct and proximate result of Defendant Beaumont's discrimination and

retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other

economic advantages of employment.

213.     As a direct and proximate result of Defendant Beaumont's discrimination and

retaliation, Ms. Miller has suffered and will continue to suffer physical pain and

suffering, including but not limited to headaches, tightness in her neck, stomach aches,

elevated blood pressure, and insomnia.

214.     As a direct and proximate result of Defendant Beaumont's discrimination and

retaliation, Ms. Miller has suffered and will continue to suffer mental/emotional pain and

suffering, including but not limited to loss of enjoyment of a normal life due to

irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic

attacks.

215.    As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

## COUNT VII

**Violation of the Michigan Persons with Disabilities Act – Disability Discrimination**

216.    Plaintiff Sheryl Miller incorporates by reference all allegations in the proceeding paragraphs.

217.    Ms. Miller brings this suit under the Michigan Persons with Disabilities Act ("PDCRA"), MCL § 37.1201, *et seq.*

218.    Ms. Miller claims Defendant Beaumont Hospital discriminated against her by not accommodating her disability.

219.    At all relevant times, Ms. Miller was an employee of Defendant Beaumont Hospital within the meaning of the PDCRA.

220.    At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the PDCRA.

221.    At all relevant times to this action, Ms. Miller was a qualified individual with a disability pursuant to the PDCRA who, with or without accommodation, could perform the essential functions of her job as Patient Access Specialist.

222.    Ms. Miller was an individual with a disability within the meaning of the PDCRA, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

223.    Ms. Miller's disability is asthma and COPD.

30

224.    Ms. Miller requested to wear her own N95 mask while working with Covid-19 patients at work.

225.    At all times relevant hereto, Defendant Beaumont Hospital had a duty under the PDCRA to accommodate Ms. Miller for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Ms. Miller includes, but is not limited to, allowing Ms. Miller to wear her own N95 mask at work, and/or transferring Ms. Miller to an available position.

226.    At all times relevant hereto, Defendant Beaumont Hospital could have accommodated Ms. Miller's disability without suffering an undue hardship.

227.    Defendant Beaumont Hospital was aware of Ms. Miller's disability at the time of Ms. Miller's request because Defendant approved FMLA leave for her asthma prior to her reasonable accommodation request.

228.    At all relevant times hereto, Defendant Beaumont Hospital had a duty under the PDCRA not to discriminate against Ms. Miller with respect to compensation or terms, conditions, or privileges of employment because of a disability.

229.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Miller with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Ms. Miller for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Ms. Miller, in retaliation for her requesting an accommodation.

230.    Notwithstanding said duties as set forth above, Defendant Beaumont Hospital discriminated against Ms. Miller because of her disability.

231.     Defendant Beaumont Hospital failed to provide Ms. Miller with a reasonable accommodation.

232.     Defendant Beaumont refused to allow Ms. Miller to wear her own N95 mask, forced Ms. Miller to take unpaid leave or use PTO, harassed and bullied Ms. Miller, and changed her assignment and shift.

233.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer lost wages, and other economic advantages of employment.

234.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer physical pain and suffering, including but not limited to headaches, tightness in her neck, stomach aches, elevated blood pressure, and insomnia.

235.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

236.     As a direct and proximate result of Defendant Beaumont's discrimination and retaliation, Ms. Miller required medical care.

## **RELIEF REQUESTED**

PLAINTIFF Sheryl Miller respectfully request that this Honorable Court enter judgment against Defendant as follows:

1.  Compensatory damages in whatever amount to which Plaintiff is entitled;

32

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  September 24, 2021                    Respectfully Submitted,

/s/ Michael L. Jones_____
Carla D. Aikens (P69530)
Michael L. Jones (P85223)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
Michael@aikenslawfirm.com