IN THE UNITED STATES DISTRICTT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL MILLER,                    )
                                  )
          PLAINTIFF,              )
                                  )    CIVIL ACTION NO. 3:21-cv-12259
     VS.                          )
                                  )    HON. GEORGE CARAM STEEH
WILLIAM BEAUMONT HOSPITAL         )    MAG. JUDGE ANTHONY P. PATTI
dba                               )
BEAUMONT HEALTH SYSTEM            )
                                  )
          DEFENDANT.              )

---

## PLAINTIFF SHERYL MILLER'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES, Plaintiff, Sheryl Miller, by and through her attorneys, CARLA D. AIKENS, P.L.C., and for her Response to Defendant's Motion for Summary Judgment, relies on the facts, law, and arguments set forth in the attached Brief in Support.

Dated: June 26, 2023

By:/s/ Carla D. Aikens
Carla D. Aikens, P.L.C.
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
Attorney for Plaintiff
615 Griswold, Ste. 709
Detroit, MI 48226
(844) 835-2993
carla@aikenslawfirm.com

IN THE UNITED STATES DISTRICTT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL MILLER,                          )
                                        )
                    PLAINTIFF,          )
                                        )     CIVIL ACTION NO. 3:21-cv-12259
           VS.                          )
                                        )     HON. GEORGE CARAM STEEH
WILLIAM BEAUMONT HOSPITAL               )     MAG. JUDGE ANTHONY P. PATTI
dba                                     )
BEAUMONT HEALTH SYSTEM                  )
                                        )
                    DEFENDANT.          )

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES.................................................................. ii

QUESTIONS PRESENTED ................................................................. iii

COUNTER STATEMENT OF MATERIAL FACTS ............................................. 1

STANDARD OF REVIEW ................................................................. 13

ARGUMENT....................................................................................... 15

   i.   Plaintiff was Denied a Reasonable Accommodation. ................................... 15

   ii.   Plaintiff was not Returned to the Same Position and Defendant Interfered with her FMLA Leave. ........................................................................ 18

   iii.   Plaintiff can Establish her Discrimination and Retaliation Claims............ 19

CONCLUSION ................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Detroit Diesel Remanufacturing, LLC*, 21 S.D.Ohio No. 2:15-cv-2825, 2017 U.S. Dist. LEXIS 161696, (Sep. 28, 2017) .............................................. 15

*Anderson v. Liberty Lobby, Inc.*, 477 US 242; 106 S.CT. 2505; 91 L.Ed.2d 202 (1986).................................................................................................... 13, 14

*Arthur v. Am. Showa, Inc.*, 625 F.App'x 704, (6th Cir. 2015) ............................... 15

*Celotex Corp v. Catrett*, 477 US 317; 106 S.CT. 2548; 91 L.Ed.2d 265 (1986) ... 13

*Crawford v. Runyon*, 37 F.3d 1338 (8th Cir. 1994)................................................. 14

*Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996) . 14

*Gallo v. Prudential Residential Services Partnership*, 22 F.3d 1219 (2nd Cir. 1994) .................................................................................................................. 13

*Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x 974 (6th Cir. 2011) ............... 15

*Johnson v. Minnesota Historical Society*, 931 F.2d 1239 (8th Cir. 1991) ............. 14

*Marzano v. Computer Science Corp.*, 91 F.3d 497 (3rd Cir. 1996) ....................... 14

*Muhammad v. Close*, 379 F.3d 413 (6th Cir. 2004) .............................................. 13

**Other Authorities**

*Questions and Answers: Enforcement Guidance on Retaliation and Related Issues*, U.S. Equal Employment Opportunity Commission, August 26, 2016; OLC Control EEOC-NVTA-2016-5 .................................................................... 20, 21

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................... 13

# QUESTIONS PRESENTED

I.      Is there a genuine issue of material fact on whether Plaintiff was denied a

        reasonable accommodation?

        a.  Plaintiff Says:                 Yes.

        b.  Defendant Says:                 No.

II.     Is there a genuine issue of material fact on whether Defendant violated

        the FMLA by interfering with Plaintiff's leave?

        a.  Plaintiff Says:                 Yes.

        b.  Defendant Says:            `    No.

III.    Has Plaintiff properly presented a claim for disability discrimination and

        retaliation under the ADA and PDCRA?

        a.  Plaintiff Says:                 Yes.

        b.  Defendant Says:                 No.

## COUNTER STATEMENT OF MATERIAL FACTS

1. Admitted.

2. Admitted. Plaintiff admits that Defendant's Exhibit 2 states the general requirements for a PAS. Plaintiff denies any implication that she failed to routinely comply or adhere to that job requirement. (**Exhibit A**: Full Deposition Transcript of Sheryl Miller at 76, 83, 106-107).

3. Admitted in part and denied in part. Plaintiff admits that obtaining accurate information is important to her role as a PAS. However, Plaintiff denies any implication that she purposefully or otherwise engaged in such behavior. (*See* Defendant's Exhibit 1, Miller Dep. Tr. 153). Plaintiff testified that her Supervisor, Roseanne Linsowe, had reason and did in fact retaliate, harass, and or belittle Plaintiff. *Id*.

4. Admitted.

5. Admitted in part. Plaintiff admits that her preference was to work at the MOB within the BCC. However, Plaintiff denies any implication that a rotating schedule allowed Defendant to violate her rights. (*See infra* at ¶ 18).

6. Neither admitted nor denied. Plaintiff cannot respond to this material fact as stated due to the fact that Exhibit 7 was not attached but rather Exhibit 1 was reattached as "Exhibit 7."

7.     Plaintiff admits that Exhibit 8 shows an approved leave for a serious health condition. However, Plaintiff cannot admit nor deny the allegation on her return date as shown by Exhibit 9, as page 2 (Beaumont (Miller) 000562) of that Exhibit covers dates between March of 2019 to July 26, 2019. To the extent possible, Plaintiff states she was off on or about December 5, 2019, for three (3) weeks due to surgery. (**Exhibit A** at 178:23-179:2).

8.     Admitted in part and denied in part. Plaintiff admits that the investment tracker and declaration state such a conversation took place. However, Plaintiff denies the unfounded deductive conclusion contained in Defendant's Exhibit 6, ¶ 12. Nothing in that paragraph, nor the preceding paragraphs, established Von Linsowe possessed the ability to issue discipline for said interaction. It is therefore improper to imply that because Von Linsowe chose not to issue a corrective action, that she somehow treated Mrs. Miller favorably when nothing in the records states Von Linsowe could have issued such an action for the June 13, 2019 incident.

9.     Plaintiff admits that Exhibit 6 states Von Linsowe received a complaint about registration speed. Plaintiff further responds by noting there was a targeted goal or number of patients ever expressed to her. (**Exhibit A** at Vol. II. At 146). Further, Plaintiff denies any implication Von Linsowe's declaration supports

her ability to issue a corrective action for the first time that an alleged registration backup occurred. (*See* **Exhibit B**: Full Deposition Transcript of Renee Carr at 11).

10.     Plaintiff admits that Exhibit 10 and Exhibit 6 state such an event took place. However, Plaintiff points to Exhibit 6 ¶ 14 stating "Mrs. [sic] Miller did improve over the following weeks," showing that she performed her role well. Plaintiff also admits that Von Linsowe brought up the topic of removing her in a threatening manner. (**Exhibit A** at 154-55). Nothing was ever done about this threat, with Von Linsowe doubling down on her threat during a meeting with the union steward. (*Id*. at 156). This sort of "toxic" behavior led to the departure of Shauna Willette, a patient access supervisor from January 2020 to July of 2020. (**Exhibit C**: Full Deposition Transcript of Shauna Willette at 9-10).

11.     Admitted and Plaintiff refers to response to fact No. 10. By way of further response, Shauna Willette stated Von Linsowe made interactions toxic and would often have arguments with her or otherwise demean her as a fellow supervisor. (**Exhibit C** at 10-11).

12.     Plaintiff cannot speak to the difference in traffic to "all of Beaumont's hospitals," as she did not work in a position receiving information on all of those locations. Further, Von Linsowe's declaration does not speak to "all of Beaumont's hospitals" nor has it been established she possessed personal knowledge of said information. To the extent the above fact refers to only the location where Mrs.

Miller work with Von Linsowe, Plaintiff admits that COVID-19 affected the operations of Beaumont Hospital.

13. Plaintiff admits that the MOB closed for a moment early in the pandemic. Plaintiff denies any implication that Von Linsowe's email counters Plaintiff's claims of retaliation or that Mrs. Miller was properly removed from her position.

14. Plaintiff admits that the union and Beaumont were in contact throughout the pandemic. However, Plaintiff points to her **Exhibit D**: Email from Geri Souve, evidencing violations of union members' rights and Von Linsowe "doing whatever she wants."

15. Plaintiff admits that N95 masks were in short supply at some point. (**Exhibit A** at Vol. II page 144). However, Plaintiff posses no personal knowledge on the manufacturing habits of Ford Motor Company nor does her Complaint deal with said alleged production by Ford Motor Company in any way.

16. Plaintiff admits that Von Linsowe told the PAR no N95 masks could be used by the PAR, including those from their own personal supply. (*See infra* at ¶¶ 19, 20, 21, 24, 25); (*see also* **Exhibit E**: Full Deposition Transcript of Roseanna Von Linsowe at 13-14).

17. Plaintiff neither admits nor denies and leaves Defendant to its proofs. Plaintiff does deny any implication that the changes in operation justify the

treatment she received upon her return, when the facts are viewed in a light most favorable to her.

18.　　Admitted in part and denied in part. Plaintiff admits that there were issues with no contact assignments, but denies that was the first, preferred, or only reasonable accommodation. (*See infra* at ¶¶ 19, 20, 21, 24).

19.　　Admitted. Plaintiff admits that Von Linsowe denied her ability to use an N95 mask **prior** to being presented with Plaintiff's FMLA certification. (*See* Defendant's Exhibit 13). Thus, Plaintiff's doctor likely had knowledge of Beaumont's refusal to allow Mrs. Miller the use of her own N95 masks prior to making the recommendation include in Defendant's Exhibit 13.

20.　　Plaintiff was denied the use of the N95 mask prior to her doctor making the recommendation on **March 25, 2020** to avoid patient contact. (*See* Defendant's Exhibit 13). Defendant admits in its Statement of Material Facts (hereinafter referred to as "SMF") Nos. 18 and 19 that Mrs. Miller and Von Linsowe had a discussion about N95 masks on **March 24, 2020**.

21.　　Plaintiff's doctor's note (Defendant's Exhibit 13) would operate as a written accommodation request. To the extent Defendant interprets this to mean that "Mrs. Miller never requested the ability to wear an N95 mask," Plaintiff admits she did not submit a written request. Plaintiff denies any implication that a

request must be made in writing as Defendant only provides unreported cases supporting said contention. (*See* Defendant's Exhibit 30).

22.     Plaintiff neither admits nor denies and leaves Defendant to its proofs to show such an email exists beyond Von Linsowe simply declaring one exists.

23.     : Plaintiff neither admits nor denies and leaves Defendant to its proofs as she would not possess personal knowledge as to the conversations or agreements between HR and the union. However, Plaintiff does state issues regarding the union contract arose due to Von Linsowe's behavior. (**Exhibit D**)

24.     Admitted in part and denied in part. Plaintiff admits that she went on leave starting March 28, 2020. (*See* Defendant's Exhibit 14). Plaintiff denies the leave was voluntary, as Von Linsowe rejected Mrs. Miller using N95 masks prior to her doctor making a treatment recommendation for her safety. (*See* Defendant's Exhibit 13); (*see also infra* at ¶ 21).

25.     Denied. Von Linsowe rejected Mrs. Miller using N95 masks prior to her doctor making a treatment recommendation for her safety. (*See* Defendant's Exhibit 13); (*see also infra* at ¶ 21). Mrs. Miller stated any position she worked in would have required her to be able to wear her own N95 mask; in accordance with guidelines about existing disabilities. (**Exhibit A** at 119, 175). Mrs. Miller's request for such an accommodation was rejected (*Id*. at Vol II. at 119, 135 175, 179). Mrs. Miller even pointed to former employee Adriana Shelley, who

requested the ability to wear an N95 mask, had her request denied, and left Beaumont because of it. (**Exhibit A** at Vol. II at 127).

26.     Admitted. Plaintiff admits that Defendant's Exhibit 16 speaks for itself. Plaintiff denies the implication that this shows Beaumont's rejection of her ability to use her own N95 masks was reasonable. (*See infra* at ¶¶ 21, 24, 25). As of May 22, 2020, Defendant was not even offering N95 masks to other staff until the "third quarter" of 2020. (**Exhibit E**: Full Deposition Transcript of Roseanna Von Linsowe at 14).

27.     Plaintiff neither admits nor denies and leaves Defendant to its proofs.

28.     Plaintiff neither admits nor denies and leaves Defendant to its proofs.

29.     Denied. Renee LaBo was not "offered" any position, as shown by her testimony. (**Exhibit F**: Full Deposition Transcript of Renee LaBo at 13-14).[1]

30.     Admitted. Plaintiff admits that she contacted her supervisor about returning to the position she had before as required under the law.

---

[1] Ms. LaBo testified that no one ever reached out or otherwise contacted her about transferring to the Breast care center. She stated she never received a choice of position.  Von Linsowe testified she did offer Ms. LaBo a choice between surgery and the breast care center and tried to clarify testimony that was not her own, stating "I believe Renee doesn't really remember." (**Exhibit E** at 20, 22). Von Linsowe did admit she had no documentation or record evidencing her alleged contact to Ms. LaBo. (*Id*. at 22).

31.     Denied. This fact operates under the premise that no other position could have been offered to Plaintiff, which is shown to be inconsistent with testimony. (*See infra* at ¶ 29).

32.     Denied. Plaintiff denies this fact and any implications arising therefrom, as Von Linsowe both questions the ability of the Union and differs to the Union as it suits her narrative. (*See* **Exhibit D**); (*see* **Exhibit E** at 26-27, 40-41). **Exhibit D** shows there were portions of the union contract that Von Linsowe ignored, as she chose to do "whatever she wants."

33.     Plaintiff neither admits nor denies as Defendant did not attach the alleged email; therefore, Plaintiff leaves Defendant to its proofs.

34.     Admitted in part and denied in part. Plaintiff admits that she returned to work on or about July 6, 2020. Plaintiff denies the implication that Beaumont protected her rights or otherwise treated Mrs. Miller properly. Renee LaBo testified she was assigned to – not asked to take –a permanent role that used to belong to Mrs. Miller prior to her time off. (**Exhibit F** at 13-14, 18).This toxic behavior was common from Von Linsowe and led to other employees arguing and eventually leaving Beaumont. (**Exhibit C** at 10-11).

35.     Plaintiff admits only that the charge speaks for itself. Plaintiff denies Defendant's implication that the charge is improper, as it clearly outlines the claims against Defendant. (Defendant's Exhibit 17). It informed Defendant about

the discrimination based on disability as well as retaliation and failure to accommodate. (*Id*.). The boxes for retaliation and disability discrimination are selected and the facts clearly show a failure to accommodate claim was being alleged. (*Id*.).

36.     Plaintiff's counsel placed an objection at her deposition and was granted a standing objection to questions calling for a legal conclusion on the basis of Plaintiff's claims, as she is not an attorney. (**Exhibit A** at 53-54). Further, Defendant's own Exhibit 9 proves Plaintiff's point about retaliatory writeups, meetings, and the like as registration issues occurred only after Mrs. Miller returned to work in July of 2020. (*See* Defendant's Exhibit 9). The Investment Tracker shows no notes on such a complaint prior to Mrs. Miller's return after her leave, in the nearly 14 months of work at the Trenton location. (*See id*.). After she returned, alleged complaints came up on August 4, 2020; August 6, 2020; October 3, 2020; October 20, 2020; October 27, 2020; October 29, 2020; November 6, 2020; November 23, 2020; January 21, 2021; May 20, 2021; June 4, 2021; Jul 19, 2021; and September 16, 2021. (*See* Defendant's Exhibit 9). Plaintiff during this time was looking for other jobs but could not transfer due to a constant stream of

write ups every two to three months as that required manager approval. (**Exhibit A** at 161-63); (**Exhibit B** at 15-16).[2]

37.    Plaintiff admits that the retaliation increased after filing her charge with the EEOC on August 20, 2020. (Defendant's Exhibit 17). Please see Response to SMF No. 36 for a timeline showing the notable uptick in registration issues not even two months after Mrs. Miller's EEOC charge was filed.

38.    Plaintiff neither admits nor denies and leaves Defendant to their proofs. (*See supra* at ¶¶ 36 and 37.

39.    Notably "misbanding" or registration issues occurred only after Mrs. Miller returned to work in July of 2020. (*See* Defendant's Exhibit 9). The Investment Tracker shows no notes on such a complaint prior to Mrs. Miller's return after her leave, in the nearly 14 months of work at the Trenton location. (*See id*.); (*see supra* at ¶¶ 36, 37).

40.    Plaintiff admits only that Von Linsowe and the Investment Tracker alleged such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

---

[2] In her cited testimony, Renee Carr admitted that the employee's manager, the one issuing the discipline, had to approve you being allowed to transfer if said employee had discipline in the six months leading up to the request. She further admitted that same requirement would not apply to someone without said discipline. With that and Shauna Willette's testimony about Von Linsowe's toxicity as well as the email from the Union steward stating Von Linsowe did "whatever she wants," as reasonable juror could find the evidence shows Mrs. Miller was being written up or alleged to have misbanding issues to prevent her transfer. Issues she did not have prior to her return from leave in July of 2020.

41.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

42.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

43.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

44.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

45.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

46.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

47.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

48.    Plaintiff admits only that Von Linsowe and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

49.    Admitted in part and denied in part. Plaintiff admits that no official corrective action has been presented by Beaumont. However, Plaintiff denies the implication that Von Linsowe did not retaliate or otherwise harass Mrs. Miller as it related to her time off and accommodation request.

50.    Admitted.

51.    Plaintiff admits only that Defendant and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

52.    Plaintiff admits that correct information is a priority in her role. However, Plaintiff denies that she committed severe or regular infractions on this issue. (*See supra* at ¶¶ 36, 37, 38, 39).

53.    Plaintiff admits only that Von Linsowe, Renee Carr and the Investment Tracker allege such an incident occurred. (*See supra* at ¶¶ 36, 37, 38, 39).

54.    Plaintiff admits that she did nothing wrong and Beaumont investigated and otherwise harassed her about an issue that was solely an accident.

55.    Plaintiff admits that Defendant issued written discipline, but denies the basis for said discipline as shown be her refusal to sign the discipline. (**Exhibit B** at 22); (*see supra* at ¶¶ 36, 37, 38, 39).

56.    Plaintiff admits that the various Exhibits speak for themselves as to their respective contents. Plaintiff denies any implication this shows Defendant did not interfere or otherwise retaliate against Plaintiff. Notably "misbanding" or registration issues occurred only after Mrs. Miller returned to work in July of 2020. (*See* Defendant's Exhibit 9). The Investment Tracker shows no notes on such a

complaint prior to Mrs. Miller's return after her leave, in the nearly 14 months of work at the Trenton location. (*See id*.).

57.     Denied. Plaintiff admitted her leave was denied by Monica Holbrook. (**Exhibit A** at 148, 151).

58.     Admitted.

59.     Denied. Plaintiff directs Defendant to ECF No. 15, PageID. 193, and the Court's Order denying Plaintiff's Motion to Amend ECF No. 13, PageID. 132.

## STANDARD OF REVIEW

As a threshold matter, summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material facts far trial and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 US 317, 322-323; 106 S.CT. 2548; 91 L.Ed.2d 265 (1986) When considering a motion for summary judgment, the District Court "must view the evidence in a light most favorable to the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 251-52; 106 S.CT. 2505; 91 L.Ed.2d 202 (1986) Finally, the Court must accept as true to the text of the note any direct evidence offered by the nonmoving party, in opposition to the summary judgment motion. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

When there is evidence an employee has suffered discrimination in the workplace, courts use great caution in granting summary judgment. For example,

in *Gallo v. Prudential Residential Services Partnership*, 22 F.3d 1219, 1223-1224

(2nd Cir. 1994), the court cautioned:

> [W]hen deciding whether this drastic provisional remedy
> should be granted in a discrimination case, additional
> considerations should be taken into account. A trial court
> must be cautious about granting summary judgment to an
> employer when, as here, its intent is at issue…Because
> writings directly supporting a claim of intentional
> discrimination are rarely, if ever, found among an
> employer's corporate papers, affidavits and depositions
> must be carefully scrutinized for circumstantial proof
> which, if believed, would show discrimination.

Other courts have likewise urged caution in granting summary judgment in

employment cases:

> Employment discrimination cases center around a single
> question: why did the employer take adverse action
> against plaintiff? Because this is clearly a factual
> question, summary judgment is in fact rarely appropriate
> in this type of case. Simply by pointing to evidence
> which calls into question the defendant's intent, the
> plaintiff raises an issue of material fact which, if genuine,
> is sufficient to preclude summary judgment.

*Marzano v. Computer Science Corp.*, 91 F.3d 497, 509-510 (3rd Cir. 1996); *See*

*also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (summary judgment

should seldom be used in employment discrimination cases); *Johnson v. Minnesota*

*Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991) (summary judgment in

employment cases should be used only in rare instances); *Evans v. Technologies*

*Applications & Service Co.*, 80 F.3d 954, 958 (4th Cir. 1996) (courts must take

special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue).

Ultimately, the standard of review for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided, that one party must prevail as a matter of law." *Anderson*, 477 US at 251-52. Plaintiff submits that, utilizing this standard, the Court should reject Defendant's position and deny summary judgment.

## ARGUMENT

### A. Plaintiff was Denied a Reasonable Accommodation.

To establish a prima facie case of failure to reasonably accommodate a disability under the ADA, Mrs. Miller must show that (1) she was a qualified individual with a disability who could perform the essential functions of her job, with or without a reasonable accommodation; (2) Defendant knew or had reason to know about her disability; (3) she requested an accommodation; and (4) Defendant refused to make a reasonable accommodation for her disability. *Arthur v. Am. Showa, Inc.*, 625 F.App'x 704, 709 (6th Cir. 2015); *Allen v. Detroit Diesel Remanufacturing, LLC*, 21 S.D.Ohio No. 2:15-cv-2825, 2017 U.S. Dist. LEXIS 161696, at *26 (Sep. 28, 2017) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x 974, 982 (6th Cir. 2011)).

Defendant's argument focuses around the accommodation Mrs. Miller requested to have the ability to wear her own N95 masks in March of 2020. (*See* Defendant's Motion for Summary Judgment, ECF No. 36, PageID. 786). Defendant cites to an unreported case, which in turn cited to an unreported case, to support its contention that Plaintiff's PWDCRA claim fails as a matter law.[3] This unreported precedent is further not factually analogous. First, Defendant rejected the request for Mrs. Miller and another employee, Adriana Shelley. (**Exhibit A** at Vol. II at 127). Von Linsowe rejected Mrs. Miller's use of N95 masks prior to her doctor making a treatment recommendation for her safety. (*See* Defendant's Exhibit 13); (*see also supra* at ¶ 21). Mrs. Miller stated that any position she worked in would have required her to be able to wear her own N95 mask; in accordance with guidelines about existing disabilities. (**Exhibit A** at 119, 175). Mrs. Miller's request for such an accommodation was rejected (*Id*. at Vol II. at 119, 135 175, 179).

Plaintiff was denied the use of the N95 mask prior to her doctor making the recommendation on **March 25, 2020**, to avoid patient contact. (*See* Defendant's Exhibit 13). Defendant admits in its Statement of Material Facts ("SMF") ¶¶ 18, 19 that Mrs. Miller and Von Linsowe had a conversation on **March 24, 2020**.

---

[3] Defendant also cites to MCL 37.210(18), which does not exist. Plaintiff assumes Defendant means MCL 37.1210(18).

Curiously, the topic of N95 masks was left out of Defendant's Exhibit 9, despite Mrs. Miller testifying that she discussed it with Von Linsowe. (¶at 125). However, Plaintiff has shown that Von Linsowe is not the most accurate historian when it comes to Mrs. Miller's situation.[4] Ms. LaBo testified that no one ever reached out to or otherwise contacted her about transferring to the breast care center. She stated she never received a choice of position. Von Linsowe testified that she did offer Ms. LaBo a choice between surgery and the breast care center and tried to clarify testimony that was not her own, stating "I believe Renee doesn't really remember." (**Exhibit E** at 20, 22). Von Linsowe did admit that she had no documentation or record evidencing her alleged contact to Ms. LaBo. (***Id***. at 22).

This argument also addresses Defendant's fail-safe argument as they point to the note, submitted after the N95 rejection, as evidence the N95 mask could not be used. This ignores the fact that Mrs. Miller obtained the note at issue after Von Linsowe had already told her she could not use her own masks. Given this information, it is entirely possible and more likely than not that Mrs. Miller's doctor made the recommendation for no contact based upon Von Linsowe's denial. The accommodation offered was not reasonable as compared to simply letting Mrs. Miller use her own masks. Defendant's choice forced Mrs. Miller to use her

---

[4] Von Linsowe stated no one ever asked about masks despite Plaintiff pointing to another individual, Adriana Shelley, who did make such a request. (*See also infra* Section B).

limited medical leave which did not cover a significant portion of her income. (**Exhibit A** at 174-75). Plaintiff wanted to work and the N95 mask would have allowed her to do so; any other alleged "accommodation" was not appropriate when the use of her own masks would not have cost Defendant a single penny.

## B. Plaintiff was not Returned to the Same Position and Defendant Interfered with her FMLA Leave.

Defendant argues that Mrs. Miller was not "entitled to job protection as her FMLA entitlement exhausted on May 22, 2020." (*See* Defendant's Motion for Summary Judgment at 19). This argument ignores an important fact that is discussed in the preceding section: Plaintiff was forced to take leave due to Defendant refusing to let her use her own N95 masks. Defendant, by its own decision, left Mrs. Miller with no choice but to use her limited leave because of its denial of a reasonable accommodation. Any exhaustion argument ignores Defendant's role in requiring such exhaustion to occur.

Defendant claims that on June 29, 2020, PAR employee Renee LaBo was offered the opportunity to work in the BCC based on union guidance, her seniority, and because she was hired on a non-rotating, day-shift basis. (SMF 29). Ms. LaBo was not "offered" any position as shown by her testimony. (**Exhibit F** at 13-14). When pressed about this inconsistency, Von Linsowe accused Ms. LaBo of having a poor recollection. (**Exhibit E** at 20, 22). Further, **Exhibit D** shows that Von Linsowe routinely violated the union contract, a fact that Von Linsowe disputes

because the stewards did not "know the exact language of the contract." (**Exhibit E** at 41). [5] There is at the bare minimum a genuine issue of material fact on this issue, which would mean that Defendant claimed it followed the union recommendations, but in actuality, it did not and it refused to offer Plaintiff the position to which she was entitled.

### C. Plaintiff can Establish her Discrimination and Retaliation Claims.

> i. *Plaintiff can prove a prima facie case of discrimination and retaliation.*

Defendant's argument in this section only concerns the adverse action and the causal connection elements. It is therefore assumed that Defendant does not contest the remaining elements necessary to prove a prima facie case of discrimination and retaliation. Defendant claims that no adverse action occurred because "Plaintiff was not discharged, she was never suspended nor demoted, nor did her pay or benefits ever change," she did not suffer an adverse action. However, the EEOC offers examples of employer actions that may be actionable as retaliation, including but not limited to:

- work-related threats, warnings, or reprimands;

- negative or lowered evaluations;

- transfers to less prestigious or desirable work or work locations;

---

[5] It would seem that Von Linsowe attempts to discredit or dismiss anyone who disagrees with her narrative. (*See generally* **Exhibit E**).

- threatening reassignment; scrutinizing work or attendance more closely than that of other employees, without justification;

- engaging in abusive verbal or physical behavior that is reasonably likely to deter protected activity, even if it is not yet "severe or pervasive" as required for a hostile work environment;[6]

Plaintiff also established earlier that the corrective actions, threats, warnings, and reprimands occurred after Plaintiff's return from leave and ramped up after she submitted her claim to the EEOC on August 20, 2020. (Defendant's Exhibit 17).

Further, Defendant's own Exhibit 9 proves Plaintiff's point about retaliatory write-ups, meetings, and the like as registration issues occurred only after Mrs. Miller returned to work in July of 2020. (*See* Defendant's Exhibit 9). The Investment Tracker shows no notes on such a complaint prior to Mrs. Miller's return after her leave, in the nearly 14 months of work at the Trenton location. (*See Id*.). Despite a clean record prior to taking leave, when she returned, alleged complaints came up on August 4, 2020; August 6, 2020; October 3, 2020; October 20, 2020; October 27, 2020; October 29, 2020; November 6, 2020; November 23, 2020; January 21, 2021; May 20, 2021; June 4, 2021; Jul 19, 2021; and September 16, 2021. (*See* Defendant's Exhibit 9). During this time, Plaintiff was looking for other jobs but could not transfer due to the constant stream of write-ups every two

---

[6] *Questions and Answers: Enforcement Guidance on Retaliation and Related Issues*, U.S. Equal Employment Opportunity Commission, August 26, 2016; OLC Control EEOC-NVTA-2016-5

to three months, as that required manager approval. (**Exhibit A** at 161-63); (**Exhibit B** at 15-16).[7]

A reasonable juror could easily find that Von Linsowe, who was promoted at the end of 2020, began the retaliation and instructed others to continue said behavior. Von Linsowe's "toxic" and discriminatory behavior led to the departure of Shauna Willette, a patient access supervisor from January 2020 to July of 2020. (**Exhibit C**: Full Deposition Transcript of Shauna Willette at 9-10). Shauna Willette stated Von Linsowe made interactions toxic and would often have arguments with her or otherwise demean her as a fellow supervisor. (**Exhibit C** at 10-11). With this information and the suspicious timeline of constant registration issues after Mrs. Miller's EEOC charge and return from leave, a reasonable juror could find that these actions were adverse, as allowed by EEOC guidance.[8]

ii.  *Plaintiff can show pretext in support of her discrimination and retaliation claims.*

As stated throughout this brief, Plaintiff has pointed to several inconsistencies in the testimony of Von Linsowe as well as the curious timeline of events presented by Defendant's Investment Tracker. As soon as Mrs. Miller began to take more of her leave, "complaints" of speed issues began. When that failed, "complaints" of registration issues began after the return from leave and EEOC

---

[7] *See supra* n. 2.

[8] *See supra* n. 6.

charge. The proximity of the events would easily allow a juror to determine the reasons offered were purely pretextual. This is further supported by the testimony of Shauna Willette, a former supervisor, who left due to Von Linsowe's behavior.

## **CONCLUSION**

WHEREFORE Plaintiff, Sheryl Miller, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety and grant such other relief as deemed necessary and appropriate in the Court's discretion.

Dated: June 26, 2023

By:/s/ CARLA D. AIKENS
CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
Attorney for Plaintiff
615 Griswold, Ste. 709
Detroit, MI  48226
(844) 835-2993
carla@aikenslawfirm.com

## **PROOF OF SERVICE**

On the date below, the undersigned certifies that a copy of the foregoing instrument was served upon all interested parties in the captioned matter via the Court's e-service system at the email addresses provided by said parties to the Court.

Dated: June 26, 2023

/s/ Katarzyna Nowicki

Katarzyna Nowicki