UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL MILLER,

       Plaintiff,

    v.

WILLIAM BEAUMONT HOSPITAL,
d/b/a BEAUMONT HEALTH SYSTEM,

       Defendant.

_____/

Case No. 21-12259

Hon. George Caram Steeh

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)

Defendant William Beaumont Hospital ("Beaumont") seeks summary

in this employment discrimination case. For the reasons explained below,

Defendant's motion is granted.

## BACKGROUND FACTS

Plaintiff Sheryl Miller is employed as a Patient Access Specialist at

Beaumont's Trenton Hospital. In that role, she is responsible for registering

patients for their procedures. Plaintiff reported to Roseanna Von Linsowe, a

Patient Access Registration (PAR) Supervisor, beginning in 2019. At that

time, Trenton Hospital had three registration areas: the Medical Office

Building, including the Breast Care Center (BCC); radiology; and surgery.

- 1 -

Plaintiff was assigned to work at the BCC, where she registered patients for mammograms and ultrasounds.

From April 29, 2019, to April 29, 2020, Plaintiff was approved for intermittent leave under the Family and Medical Leave Act (FMLA) for her asthma. She went on a continuous leave from December 5, 2019, to January 13, 2020, for a different health condition.

After her return from leave, there were complaints that Plaintiff was not registering patients in a timely manner, putting the BCC behind schedule. Von Linsowe spoke to her about the issue and told her that if she did not improve she could be moved to a different registration area. Plaintiff met with Von Linsowe, PAR Director Beth Karr, and union steward Geri Souve to request an opportunity to improve because she wanted to stay at the BCC. Von Linsowe and Karr agreed, and Plaintiff's performance improved over the following weeks.

In March 2020, hospitals were flooded with patients due to the COVID-19 pandemic. This resulted in changes to normal operations at Beaumont, including the temporary shutdown of elective procedures and non-emergent imaging and surgeries. As a result, the Medical Office Building temporarily closed on March 23, 2020, and the radiology department closed as well. With no patients to register for elective

procedures, there was not enough work for the Patient Access Specialists to do. As the hospital navigated this issue, Patient Access Specialists were offered the opportunity to take paid or unpaid time off, which would not be counted against them. On March 24, 2020, all PAR staff were moved to Trenton Hospital's main registration area, located outside the emergency department.

Around this time, Von Linsowe received a shipment of N95 masks, which she distributed to Patient Access Specialists. However, because of the nationwide shortage of N95 masks, Von Linsowe was directed to return the unused masks so that they could be reserved for front-line medical staff, such as doctors and nurses. Von Linsowe told Patient Access Specialists that they could not use N95 masks because they did not have direct patient contact. Instead, Beaumont would supply surgical masks, gowns, and gloves.

On March 24, 2020, Plaintiff told Von Linsowe that she was afraid to work in main registration near the emergency department. Plaintiff requested that she be permitted to wear N95 masks from her own supply. Von Linsowe told her that she could not and that there were no positions without patient contact, but that she could take unpaid leave or paid time off

and it would not be counted against her. Plaintiff worked March 25 and 27, then began a leave of absence on March 28, 2020.

Plaintiff submitted a FMLA certification from her doctor, dated March 25, 2020, which stated that she "has severe steroid dependent asthma with frequent remissions. . . . She is advised to avoid any patient with flu or corona virus due to high risks of severe asthma relapse." ECF No. 36-14. Plaintiff's leave was approved from March 28, 2020, to July 31, 2020. The approval letter stated that her "FMLA job protected leave entitlement will exhaust" on May 22, 2020. ECF No. 36-15.

In the meantime, on March 26, 2020, Von Linsowe emailed staff to ask for volunteers to take time off to avoid involuntary staff reductions. The union agreed that employees with the lowest seniority would be placed in a labor pool for assignments outside of patient registration. In April 2020, PAR staff began rotating through all areas of registration to allow for greater flexibility in scheduling. As elective services began to reopen in May 2020, PAR staff were "redeployed" in order of seniority, and redeployed staff rotated through the different registration areas of the hospital.

In June 2020, Plaintiff informed Von Linsowe that she planned to return to work on July 6, 2020, and expected to be working in the BCC from

- 4 -

7 a.m. to 3:30 p.m., which was the shift she worked prior to the pandemic. Von Linsowe explained that patient registration was not yet fully staffed and that staff were assigned in order of seniority. Von Linsowe advised Plaintiff of the available shifts based upon her seniority, and Plaintiff said that she needed to speak with the union. According to Von Linsowe, she confirmed with the union steward that she was following the agreement with regard to staffing. Plaintiff alleges that her previous position at the BCC was occupied by Renee LaBo, who was not required to rotate. When Plaintiff went back to work on July 6, 2020, she returned to a patient access registration position on a rotating schedule.

On August 4 and 6, 2020, Von Linsowe received complaints from the radiology department regarding Plaintiff's performance. The complaints were that Plaintiff registered a patient without a prescription and that she did not let radiology know when two patients were registered and waiting. Von Linsowe relayed these issues to Plaintiff, letting her know that all PAR staff were expected to be proficient every area of registration.

On August 20, 2020, Plaintiff filed a charge with EEOC, alleging that Beaumont failed to accommodate her disability and retaliated against her by failing to return her to the BCC after her leave. According to Beaumont, Von Linsowe was the only supervisor who was aware of Plaintiff's charge.

Von Linsowe received several more complaints from the radiology and cardiology departments about Plaintiff's performance in October and November 2020.[1] These issues included registration mistakes, such as registering a patient without a prescription, and delays in registering patients. Von Linsowe counseled Plaintiff about these errors, but did not issue any formal discipline.

Around November 30, 2020, Renee Carr became Plaintiff's supervisor. On January 21, 2021, Carr received complaints from radiology that Plaintiff registered a patient for the wrong procedure, registered a patient without a prescription, and registered a patient with an incorrect name. As a result of these issues, Plaintiff was provided additional training in radiology.

Plaintiff was issued corrective action in the form of counseling on February 8, 2021, for incorrectly banding a patient with another patient's information. Plaintiff acknowledged that this type of mistake creates a safety issue for patients.

---

[1] Plaintiff does not allege facts disputing that complaints were received about her performance. In general, she responds to Beaumont's recitation of her performance issues by stating that she "admits only" that Defendant "alleges such an incident occurred." ECF No. 38 at PageID 1070-72. This type of response, devoid of factual content, does not create a genuine issue of fact precluding summary judgment.

Over the next few months, Carr informally counseled Plaintiff about registration mistakes and delays several times. On September 16, 2021, the radiology department complained that Plaintiff placed the wrong identification band on a patient and registered a patient for an x-ray on the wrong hip. As a result of these incidents, Plaintiff was issued a corrective action in the form of a first written warning on October 4, 2021. The record does not mention any further discipline issued to Plaintiff, who continues to work in patient registration at Trenton Hospital.

Plaintiff was approved for several intermittent and continuous FMLA leaves from 2020 to 2022, including leaves for her own health conditions and to care for her husband. Beaumont states that it did not deny Plaintiff any requested FMLA leave. Although Plaintiff argues that she was denied leave in her brief, she does not specify which request for leave was allegedly denied. Moreover, Plaintiff admitted in her deposition that she was not denied leave. ECF No. 38-1 at PageID 1125-26.

Plaintiff filed this action on September 24, 2021, alleging that Beaumont failed to accommodate her disability under the Americans with Disabilities Act (ADA) and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), interfered with her leave and retaliated against her in violation of the FMLA, and discriminated and retaliated against her in

violation of the ADA and PWDCRA. Defendant has moved for summary judgment on all of these claims.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 252.

II.   Failure to Accommodate Claim under ADA and PWDCRA

To establish a failure to accommodate claim, the plaintiff bears the burden of establishing that (1) she is disabled; and (2) she is "otherwise qualified" for the position, either without an accommodation, with an alleged "essential" job requirement eliminated, or with a reasonable accommodation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811– 12 (6th Cir. 2020). The employer bears the burden of proving that a challenged job requirement is essential or that a proposed accommodation will cause an undue hardship. *Id.; see also Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (noting that "[t]he PWDCRA 'substantially mirrors' the ADA, and a resolution of the ADA claims will 'generally, though not always, resolve the plaintiff's PWDCRA claim'").

Plaintiff alleges that she was denied a reasonable accommodation when Beaumont refused to allow her to wear her own N95 mask. However, this accommodation would have contravened the restrictions imposed by Plaintiff's doctor, who advised her to "avoid any patient with flu or coronavirus due to high risk of severe asthma relapse." ECF Nos. 36-14, 36-16, 36-17. Plaintiff's doctor did not indicate that she could have patient contact if she wore a N95 mask. Because Plaintiff's proposed accommodation was inconsistent with her doctor's restrictions, it is not

objectively reasonable as a matter of law. *Horn v. Knight Facilities Mgmt.-GM, Inc.*, 556 Fed. Appx. 452, 455 (6th Cir. 2014) (proposed accommodations not objectively reasonable "because they both fail to comply with the physician-mandated restriction"); *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden."); *Jones v. Walgreen Co.*, 765 F. Supp.2d 100, 108 n.3 (D. Mass. 2011), *aff'd*, 679 F.3d 9 (1st Cir. 2012) ("[A]n employer is obviously not obligated to offer an "accommodation" to an employee that is contrary to medical advice and would place the employee at risk.").

Plaintiff argues that she obtained her doctor's note *after* she was told that she could not use her own mask and "that it is *entirely possible* and *more likely than not* that Mrs. Miller's doctor made the recommendation for no contact based upon" this denial. ECF No. 38 at PageID 1077 (emphasis added). Plaintiff points to no facts in the record to support this argument, however, which consists entirely of conjecture.

It is Plaintiff's burden to demonstrate that she proposed a reasonable accommodation. *Tchankpa*, 951 F.3d at 812. Because she has failed to do

so, Plaintiff cannot sustain her accommodation claims under the ADA or PWDCRA.[2]

III.    Discrimination under the ADA and PWDCRA

To establish a prima facie case of disability discrimination, an employee must demonstrate that "(1) she has a disability, (2) she is otherwise qualified for the job with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know of her disability, and (5) her position remained open, or she was replaced." *Hrdlicka*, 63 F.4th at 566-67 (cleaned up). An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996), but rather "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiff continues to be employed by Beaumont and was returned to her position after her leave. She has failed to respond to Defendant's

---

[2] Additionally, Plaintiff's accommodation claim under the PWDCRA cannot proceed because she did not request her accommodation in writing as required by that statute. M.C.L. § 37.1210(18).

argument that she did not suffer a materially adverse employment action sufficient to support a discrimination claim. Accordingly, Plaintiff has not established a prima facie case of discrimination and has abandoned any argument to the contrary. *See Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

IV.   Retaliation under the ADA, PWDCRA, and FMLA

Plaintiff contends that she suffered an adverse employment action in the context of her retaliation claims. A prima facie case of retaliation requires a plaintiff to demonstrate: "that she engaged in protected activity; that the exercise of her civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998) (ADA); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (FMLA). "A plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)).

In the retaliation context, a materially adverse employment action is one

that "well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68

(cleaned up).

Plaintiff alleges that she received numerous "write-ups" after she

returned from leave and after filing her EEOC charge. These "corrective

actions, threats, warnings, and reprimands" arguably meet the "relatively

low bar" required for an adverse action in the context of a retaliation claim.

*See Michael*, 496 F.3d at 596 (ninety-day performance plan and brief

administrative leave sufficient to meet adverse action prong).

Plaintiff must also demonstrate, however, that a causal connection

exists between the adverse actions and her protected activity. In this

regard, Plaintiff relies upon the temporal proximity between her return from

leave, the EEOC charge, and the complaints regarding her performance

and write-ups. But the Sixth Circuit has "repeatedly cautioned against

inferring causation based on temporal proximity alone." *Wasek v. Arrow*

*Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012).

Defendant contends that Plaintiff received performance counseling

and discipline based upon complaints from other departments regarding

her accuracy and speed in registering patients. Other than temporal proximity, Plaintiff offers no evidence that these actions are related to her protected activity. Moreover, Plaintiff offers no evidence that the supervisor who issued the formal discipline, Renee Carr, was aware of her EEOC charge.

As a related matter, Plaintiff also presents no evidence that the reasons Defendant provided for her disciplinary actions are pretextual. Defendant documented significant errors in Plaintiff's performance, such as placing the wrong identification bracelet on a patient or registering a patient for the wrong procedure. Plaintiff offers no specific rebuttal to these legitimate, non-discriminatory reasons for her corrective actions. *See Michael*, 496 F.3d at 597 (a plaintiff may demonstrate pretext by showing that the employer's reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). Plaintiff's subjective beliefs and conclusory allegations that Defendant's actions were retaliatory are insufficient to survive summary judgment.

V.   <u>FMLA Interference Claim</u>

Plaintiff also alleges that Defendant interfered with her right to take FMLA leave. To establish a prima facie case of interference under the

FMLA, Plaintiff must show that "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Donald,* 667 F.3d at 761. "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Id.*

Plaintiff's interference claim is based upon Beaumont's failure to return her to the BCC after her 2020 leave, and she complains that Renee LaBo was scheduled to work in that area instead of her. Plaintiff does not dispute, however, that at the time of her leave the BCC was closed and staff were thereafter assigned on a rotating basis. She also does not dispute that LaBo had more seniority than she did. Although Plaintiff suggests that her assignment was not consistent with union guidance, she provides no evidence in this regard.[3] She also provides no evidence that her job assignment was based upon her leave rather than seniority-based rotation, as Beaumont asserts. *See Edgar v. JAC Prod., Inc.*, 443 F.3d 501,

---

[3] Plaintiff generally asserts that Von Linsowe "routinely" violated the union contract but does not address the specific facts surrounding her return to work.

508 (6th Cir. 2006) (an employer's "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct"). Moreover, Plaintiff does not dispute that her entitlement to job restoration was exhausted on May 22, 2020; Beaumont nonetheless returned her to work in July 2020. *See id.* at 506 (after twelve weeks of leave, employees have no right to job restoration under the FMLA). Under the circumstances, when Plaintiff was returned to her job after leave, with no difference in title or pay, and she cannot show her assignment was related to her leave, she cannot sustain her FMLA interference claim.

<u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (ECF No. 36) is GRANTED.

Dated: October 11, 2023

<u>s/George Caram Steeh</u>
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 11, 2023, by electronic and/or ordinary mail.

<u>s/Michael Lang</u>
Deputy Clerk

---