IN THE UNITED STATES DISTRICTT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL MILLER,                    )
                                  )
        PLAINTIFF,                )
                                  )    CIVIL ACTION NO. 2:21-cv-12259
    VS.                           )
                                  )    HON. GEORGE C. STEEH
WILLIAM BEAUMONT HOSPITAL         )    MAG. JUDGE ANTHONY P. PATTI
dba                               )
BEAUMONT HEALTH SYSTEM            )
                                  )
        DEFENDANT.                )

---

## PLAINTIFF SHERYL MILLER'S MOTION FOR RECONSIDERATION OF THE OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)

NOW COMES, Plaintiff, Sheryl Miller, by and through her attorneys, CARLA D. AIKENS, P.L.C., and for her Motion for Reconsideration of the Opinion and Order Granting Defendant's Motion for Summary Judgment, relies on the facts, law, and arguments set forth in the attached Brief in Support.

BY:/S/ *CARLA D. AIKENS*
CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
Attorney for Plaintiff
615 Griswold, Ste. 709
Detroit, MI  48226
(844) 835-2993
carla@aikenslawfirm.com

IN THE UNITED STATES DISTRICTT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL MILLER,                    )
                                  )
            PLAINTIFF,            )
                                  )    CIVIL ACTION NO. 2:21-cv-12259
       VS.                        )
                                  )    HON. HON. GEORGE C. STEEH
WILLIAM BEAUMONT HOSPITAL   )    MAG. JUDGE ANTHONY P. PATTI
dba                               )
BEAUMONT HEALTH SYSTEM      )
                                  )
            DEFENDANT.

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ..................................................................... ii

QUESTIONS PRESENTED ...................................................................... iv

STATEMENT OF MATERIAL FACTS ................................................... 1

STANDARD OF REVIEW ........................................................................ 5

ARGUMENT ............................................................................................. 7

    A.   Plaintiff was Denied a Reasonable Accommodation. ................................. 7

    B.   Plaintiff was not Returned to the Same Position and Defendant Interfered with her FMLA Leave. ....................................................................... 11

    C.   Plaintiff can Establish her Discrimination and Retaliation Claims ............ 12

CONCLUSION ......................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Detroit Diesel Remanufacturing, LLC*, Case No. 2:15-cv-2825, 2017 U.S. Dist. LEXIS 161696 (S. D. Ohio Sep. 28, 2017)....................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 US 242; 106 S.CT. 2505; 91 L.Ed.2d 202 (1986) ..............................................................................................................6, 7

*Arthur v. Am. Showa, Inc.*, 625 F.App'x 704 (6th Cir. 2015) ...................................8

*Celotex Corp v. Catrett*, 477 US 317, 106 S.CT. 2548; 91 L.Ed.2d 265 (1986) ......6

*Crawford v. Runyon*, 37 F.3d 1338 (8th Cir. 1994)...................................................7

*Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996) ....7

*Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605 (E.D. Mich. 2001) ..........................5

*Gallo v. Prudential Residential Svcs. P'ship*, 22 F.3d 1219 (2nd Cir. 1994) ...........6

*Graham v. Cty. of Washtenaw*, 358 F.3d 377 (6th Cir. 2004)...................................5

*Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x 974 (6th Cir. 2011) ..................8

*Johnson v. Minnesota Historical Society*, 931 F.2d 1239 (8th Cir. 1991) ...............7

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007) .........................11

*Marzano v. Computer Science Corp.*, 91 F.3d 497 (3rd Cir. 1996) .........................7

*Muhammad v. Close*, 379 F.3d 413 (6th Cir. 2004) .................................................6

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020).............. 10, 11

*Walsh v. UPS*, 201 F.3d 718 (6th Cir. 2000) ..........................................................11

**Other Authorities**

*Questions and Answers: Enforcement Guidance on Retaliation and Related Issues*, U.S. Equal Employment Opportunity Commission, August 26, 2016; OLC Control EEOC-NVTA-2016-5 ............................................................................13

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................5

## <u>QUESTIONS PRESENTED</u>

I.      Is there a genuine issue of material fact on whether Plaintiff was denied a

reasonable accommodation?

      Plaintiff Says:                              Yes.

      Defendant Says:                           No.

II.     Is there a genuine issue of material fact on whether Defendant violated

the FMLA by interfering with Plaintiff's leave?

      Plaintiff Says:                              Yes.

      Defendant Says:                  `       No.

III.    Has Plaintiff properly presented a claim for disability discrimination and

retaliation under the ADA and PDCRA?

      Plaintiff Says:                              Yes.

      Defendant Says:                           No.

## STATEMENT OF MATERIAL FACTS

Plaintiff, Sheryl Miller, is employed as a Patient Access Specialist ("PAR") with Defendant, and began reporting to Roseanna Von Linsowe, a PAR Supervisor, in 2019. During the beginning of that relationship, Plaintiff worked in the Breast Care Center ("BCC"). Ms. Miller, despite attempts by Defendant to mischaracterize her testimony in its Motion, clearly denied any implication of failure to adhere to her job duties as stated throughout Defendant's Motion. (Exhibit A: The Full Deposition Transcript of Sheryl Miller at 76, 83, 106-107) (*See* Defendant's Exhibit 1, Miller Dep. Tr. 153). These allegations of failure to properly register patients or otherwise shirk her responsibilities are based primarily on the testimony of Roseanne Von Linsowe. (ECF No. 36, PageID. 770-782).[1] Von Linsowe is the same individual that is central to the retaliation, harassment, and belittlement of Ms. Miller, which was purposefully done against Ms. Miller. (Plaintiff's Exhibit A at 76. 83, 106-07).

Defendant relied heavily on the investment tracker and declaration of Von Linsowe to show not only the alleged failures of Ms. Miller, but the "favorable treatment" Ms. Miller supposedly received. (Defendant's Exhibit 6 at ¶12). However, no document or testimony supports this alleged favorably treatment as

---

[1] Defendant specially relies on Von Linsowe's testimony or declaration in ¶4, ¶5, ¶8, ¶9, ¶10, ¶11, ¶12, ¶13, 14, ¶16, ¶17, ¶18, ¶19, ¶22, ¶25, ¶27, ¶28, ¶29, ¶30, ¶31, ¶32, ¶33, ¶34, ¶35, ¶38, ¶39, ¶42, ¶43, ¶45, ¶46, ¶47, ¶48, and ¶49.

nothing was presented to support the apparent ability of Von Linsowe to discipline Ms. Miller for the June 13, 2019 incident. [2]

In fact, testimony from Renee Carr supports Ms. Miller's understanding that Von Linsowe did not possess the ability to issue a corrective action for the first time that an alleged registration backup occurred. (*See* Exhibit B: Full Deposition Transcript of Renee Carr at 11). Von Linsowe routinely used this investment tracker and the threat of retaliation to create a toxic environment that led to the departure of Shauna Willette, another PAR. (*See* Exhibit C: Full Deposition Transcript of Shauna Willette at 9-10). Willette clearly testified Von Linsowe made interactions toxic and would often have arguments with her or otherwise demean her as a fellow supervisor. (*Id.* at 10-11).

Defendant claims COVID-19 as a reason for both its refusal to allow Ms. Miller to wear her own masks as well as the reason for removing her from the MOB, where Ms. Miller worked, which did close for a moment early in the pandemic.[3] The pandemic, according to Defendant, created the situation to remove Ms. Miller from her role; however, the testimony of Willette, the emails from Geri

---

[2] During these alleged performance issues, no representative or agent of Defendant expressed a targeted goal or number of patients. (Exhibit A at Vol. II. At 146).

[3] Defendant's declaration from Von Linsowe claims there was an email sent out about limited availability of work but no record of such an email has been provided by Defendant during discovery or in support of its motion.

Souve[4] and testimony of Renee LaBo counter this assertion as well as the alleged process Von Linsowe claimed to follow. (Exhibit C); (Exhibit D: Email from Geri Souve); (Exhibit F: Full Deposition Transcript of Renee LaBo at 13-14).

It is fairly common knowledge that N95 masks were in short supply at some point. (Exhibit A at Vol. II page 144). Defendant prohibited the staff from using masks supplied by Defendant. (Exhibit E: Full Deposition Transcript of Roseanna Von Linsowe at 13-14). Von Linsowe went a step further by denying Ms. Miller the ability to use an N95 mask **prior** to being presented with Plaintiff's FMLA certification. (*See* Defendant's Exhibit 13).[5] These facts led Ms. Miller to need to take a medical leave starting March 28, 2020, as no accommodation was available for her by Von Linsowe's denial of the N95 masks. (*See* Defendant's Exhibit 14); (Defendant's Exhibit 13)

Any position Ms. Miller worked in would have required her to be able to wear her own N95 mask; in accordance with guidelines about existing disabilities. (Exhibit A at 119, 175). Ms. Miller's request for such an accommodation was rejected and she even stated that Adriana Shelley, who requested the ability to

---

[4] This email is direct evidence of violations of union members' rights and Von Linsowe "doing whatever she wants."

[5] A reasonable juror could easily infer that Mrs. Miller told her doctor about Von Linsowe's outright prohibition on personal N95 masks given that the denial occurred prior to the recommendation of the doctor. The discussion on masks occurred on March 24, 2020 by the Defendant's own admission with Mrs. Miller's medical recommendation coming the next day.

wear an N95 mask, had her request denied and left Beaumont because of it. (Exhibit A at Vol. II at 119, 127, 135 175, 179). Defendant did not end up offering N95 masks to other staff until the "third quarter" of 2020. (Exhibit E: Full Deposition Transcript of Roseanna Von Linsowe at 14).

Ms. Miller returned to work on or about July 6, 2020, with Von Linsowe refusing to allow Ms. Miller back to the MOB because Renee LaBo selected that position and had higher seniority. LaBo testified, however she was assigned, not offered the MOB role. (Exhibit F at 13-14, 18).

After her return to work, Ms. Miller began receiving retaliatory writeups, meetings, and the like as registration issues. (*See* Defendant's Exhibit 9). The investment tracker shows no notes on such a complaint prior to Ms. Miller's return from leave, in the nearly 14 months of work at the Trenton location. (*See id*.). After she returned, alleged complaints came up on August 4, 2020; August 6, 2020; October 3, 2020; October 20, 2020; October 27, 2020; October 29, 2020; November 6, 2020; November 23, 2020; January 21, 2021; May 20, 2021; June 4, 2021; July 19, 2021; and September 16, 2021. (*See* Defendant's Exhibit 9). Plaintiff during this time was looking for other jobs but could not transfer due to a constant stream of write-ups every two to three months as that required manager

approval. (Exhibit A at 161-163) (Exhibit B at 15-16).[6] The retaliation increased after filing her charge with the EEOC on August 20, 2020. (Defendant's Exhibit 17).

## STANDARD OF REVIEW

Motions for reconsideration are governed by E. D. Mich. L R 7.1(h). A party seeking reconsideration "must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). A "palpable defect" is one which is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605, 624 (E.D. Mich. 2001). Plaintiff respectfully requests that this Court reconsider its order granting summary judgment to Defendant as follows.

As a threshold matter, summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material facts far trial and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp*

---

[6] Renee Carr admitted that the employee's manager, the one issuing the discipline, had to approve one being allowed to transfer if said employee had discipline in the six months leading up to the request. She further admitted that same requirement would not apply to someone without said discipline. With that and Shauna Willette's testimony about Von Linsowe's toxicity, as well as the email from the union steward stating Von Linsowe did "whatever she wants," a reasonable juror could find that Mrs. Miller was being written up or alleged to have misbanding issues to prevent her transfer. These were issues she did not have prior to her return from leave in July of 2020.

5

*v. Catrett*, 477 US 317, 322-323; 106 S.CT. 2548; 91 L.Ed.2d 265 (1986) When considering a motion for summary judgment, the district court "must view the evidence in a light most favorable to the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 251-52; 106 S.CT. 2505; 91 L.Ed.2d 202 (1986) Finally, the Court must accept as true to the text of the note any direct evidence offered by the nonmoving party, in opposition to the summary judgment motion. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

When there is evidence that an employee has suffered discrimination in the workplace, courts use great caution in granting summary judgment. For example, in *Gallo v. Prudential Residential Services Partnership*, 22 F.3d 1219, 1223-1224 (2nd Cir. 1994), the court cautioned:

> [W]hen deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue…Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

Other courts have likewise urged caution in granting summary judgment in employment cases:

> Employment discrimination cases center around a single question: why did the employer take adverse action against plaintiff? Because this is clearly a factual

6

> question, summary judgment is in fact rarely appropriate in this type of case. Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.

*Marzano v. Computer Science Corp.*, 91 F.3d 497, 509-510 (3rd Cir. 1996); *See also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (summary judgment should seldom be used in employment discrimination cases); *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991) (summary judgment in employment cases should be used only in rare instances); *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 958 (4th Cir. 1996) (courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue).

Ultimately, the standard of review for summary judgment is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided, that one party must prevail as a matter of law." *Anderson*, 477 US at 251-52. Plaintiff submits that, utilizing this standard, summary judgment should have been denied.

## **ARGUMENT**

*A. Plaintiff was Denied a Reasonable Accommodation.*

To establish a prima facie case of failure to reasonably accommodate a disability under the ADA, Ms. Miller must show that (1) she was a qualified

individual with a disability who could perform the essential functions of her job, with or without a reasonable accommodation; (2) Defendant knew or had reason to know about her disability; (3) she requested an accommodation; and (4) Defendant refused to make a reasonable accommodation for her disability. *Arthur v. Am. Showa, Inc.*, 625 F.App'x 704, 709 (6th Cir. 2015); *Allen v. Detroit Diesel Remanufacturing, LLC*, Case No. 2:15-cv-2825, 2017 U.S. Dist. LEXIS 161696, at *26 (S. D. Ohio Sep. 28, 2017) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x 974, 982 (6th Cir. 2011)).

Defendant's argument focuses around the accommodation Ms. Miller requested to have the ability to wear her own N95 masks in March of 2020. (*See* Defendant's Motion for Summary Judgment, ECF No. 36, PageID. 786). Defendant cites to an unreported case, which in turn cited to an unreported case, to support its contention that Plaintiff's PWDCRA claim fails as a matter law.[7] Defendant's argument relies on unreported precedent that is not factually analogous. First, Defendant rejected the request for Ms. Miller and another employee, Adriana Shelley. (Exhibit A at Vol. II at 127). Von Linsowe rejected Ms. Miller using N95 masks prior to her doctor making a treatment recommendation for her safety. (*See* Defendant's Exhibit 13); (*see also* Response

---

[7] Defendant also cites to MCL 37.210(18), which does not exist. Plaintiff assumes Defendant means MCL 37.1210(18).

to SMF No. 21). Ms. Miller stated any position she worked in would have required her to be able to wear her own N95 mask; in accordance with guidelines about existing disabilities. (Exhibit A at 119, 175). Ms. Miller's request for such an accommodation was rejected (*Id*. at Vol II. at 119, 135 175, 179).

Plaintiff was denied the use of the N95 mask prior to her doctor making the recommendation on **March 25, 2020**, to avoid patient contact. (*See* Defendant's Exhibit 13). Defendant admits in SMF No. 18 and 19 that Ms. Miller and Von Linsowe had a conversation on **March 24, 2020**. Conveniently, the topic of N95 masks was left out of Defendant's Exhibit 9, despite Ms. Miller testifying she discussed it with Von Linsowe. (Exhibit A at 125). Von Linsowe has been shown not to be the most accurate historian when it comes to Ms. Miller's situation.[8] Ms. LaBo testified that no one ever reached out or otherwise contacted her about transferring to the Breast care center. She stated she never received a choice of position. Von Linsowe testified she did offer Ms. LaBo a choice between surgery and the breast care center and tried to clarify testimony that was not her own stating "I believe Renee doesn't really remember." (Exhibit E at 20, 22). Von Linsowe did admit she had no documentation or record evidencing her alleged contact to Ms. LaBo. (*Id*. at 22).

---

[8] Von Linsowe stated no one ever asked about masks despite Plaintiff pointing to another individual, Adriana Shelley, who did make such a request. (See also argument in Section (*ii*)).

This argument also addresses Defendant's fail-safe argument as they point to the note, submitted after the N95 rejection, as evidence the N95 mask could not be used. This ignores the fact that Ms. Miller went and got the note at issue after Von Linsowe had already told her she could not use her own masks. Armed with that information it is entirely possible and more than likely Ms. Miller's doctor made the recommendation for no contact based upon Von Linsowe's denial. The accommodation offered was not reasonable when compared to simply letting Ms. Miller use her own masks. Defendant's choice forced Ms. Miller to use her limited medical leave which did not cover a significant portion of her income. (Exhibit A at 174-75). Plaintiff wanted to work and the N95 mask would have allowed her to do so; any other alleged "accommodation" was not appropriate when the use of her own masks would not have cost Defendant any expense.

This Honorable Court relied in part on *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020) in stating Ms. Miller could not sustain her accommodation claims. (ECF No. 41, PageID. 1303).

> Instead, this Circuit uses a multi-part test to evaluate reasonable accommodation claims:
>
> (1) The plaintiff bears the burden of establishing that he or she is disabled.(2) The plaintiff bears the burden of establishing that he or she is otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer

10

will bear the burden of proving that a challenged job criterion is [***6] essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 811-12. (quoting, *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (internal citations omitted).

"Plaintiffs must also propose a reasonable accommodation to succeed" *Id.* (citing, *Walsh v. UPS*, 201 F.3d 718, 725-26 (6th Cir. 2000)) There can be no argument to the contrary that allowing Ms. Miller to wear her own N95 masks is a reasonable accommodation given the situation. Plaintiff's doctor issued the note after Von Linsowe's email and discussion about the use of N95 masks. Resolving factual disputes in favor of the non-moving party, Ms. Miller, supports at the bare minimum a dispute as to what Ms. Miller's doctor knew at the time of the note. This is a fact that would easily be presented at trial via testimony of either Ms. Miller or the doctor themselves.

### B. Plaintiff was not Returned to the Same Position and Defendant Interfered with her FMLA Leave.

Defendant argues that Ms. Miller was not "entitled to job protection as her FMLA entitlement exhausted on May 22, 2020." (See Defendant's Motion for Summary Judgment at 19). This argument ignores an important fact that is discussed in the preceding section: Plaintiff was forced to take leave due to Defendant refusing to let her use her own N95 masks. Defendant, by their decision,

11

left Ms. Miller with no choice but to use her limited leave because of their denial of a reasonable accommodation. Any exhaustion argument ignores Defendant's role in making such exhaustion occur.

Defendant claims that on June 29, 2020, PAR employee Renee LaBo was offered the opportunity to work in the BCC based on union guidance, her seniority, and because she was hired on a non-rotating, day-shift basis. (SMF 29). Ms. LaBo was not "offered" any position as shown by her testimony. (Exhibit F: Full Deposition Transcript of Renee LaBo at 13-14). When pressed about this inconsistency, Von Linsowe accused Ms. LaBo of having a poor recollection. (Exhibit E at 20, 22). Further, Exhibit D shows that Von Linsowe routinely violated the Union contract, a fact that Von Linsowe disputes because the stewards did not "know the exact language of the contract." (Exhibit E at 41). [9] There is at the bare minimum a genuine issue of material fact on this issue which would mean that Defendant claimed it followed the Union recommendations, but in actually, it did not and refused to offer Plaintiff the position to which she was entitled.

*C. Plaintiff can Establish her Discrimination and Retaliation Claims*

1. Plaintiff can prove a prima facie case of discrimination and retaliation.

Defendant's argument under this section only concerns the adverse action and the causal connection elements. It is therefore assumed that Defendant does

---

[9] It would seem that Von Linsowe attempts to discredit or dismiss anyone who disagrees with her narrative. (*See generally* Exhibit E).

not contest the remaining elements necessary to prove a prima facie case of discrimination and retaliation. Defendant claims that no adverse action occurred because "Plaintiff was not discharged, she was never suspended nor demoted, nor did her pay or benefits ever change" so she did not suffer an adverse action. However, the EEOC offers examples of employer actions that may be actionable as retaliation, including but not limited to:

- work-related threats, warnings, or reprimands;

- negative or lowered evaluations;

- transfers to less prestigious or desirable work or work locations;

- threatening reassignment; scrutinizing work or attendance more closely than that of other employees, without justification;

- engaging in abusive verbal or physical behavior that is reasonably likely to deter protected activity, even if it is not yet "severe or pervasive" as required for a hostile work environment;[10]

Plaintiff also established earlier that the corrective actions, threats, warnings, and reprimands occurred after Plaintiff's return from leave and ramped up after she submitted her claim to the EEOC on August 20, 2020. (Defendant's Exhibit 17). These enumerated points from the EEOC show that Ms. Miller certainly has sufficient adverse action to support her claims. She was transferred out of her slower paced position and told it was based upon seniority; a fact that is refuted by

---

[10] *Questions and Answers: Enforcement Guidance on Retaliation and Related Issues*, U.S. Equal Employment Opportunity Commission, August 26, 2016; OLC Control EEOC-NVTA-2016-5

13

Renee LaBo's testimony. She received numerous and repetitive write-ups after returning from leave on issues of "misbranding"; an issue she did not have **prior** to her return from leave in July of 2020.

Further, Defendant's own Exhibit 9 proves Plaintiff's point about retaliatory write-ups, meetings, and the like as registration issues occurred only after Ms. Miller returned to work in July of 2020. (*See* Defendant's Exhibit 9). The investment tracker shows *no notes on such a complaint prior to Ms. Miller's return* from leave, in the nearly 14 months of work at the Trenton location. (*See id.*). After she returned, alleged complaints came up on August 4, 2020; August 6, 2020; October 3, 2020; October 20, 2020; October 27, 2020; October 29, 2020; November 6, 2020; November 23, 2020; January 21, 2021; May 20, 2021; June 4, 2021; July 19, 2021; and September 16, 2021. (*See* Defendant's Exhibit 9). Plaintiff during this time was looking for other jobs but could not transfer due to the constant stream of write-ups every two to three months, as that required manager approval. (Exhibit A at 161-163) (Exhibit B at 15-16).

A reasonable juror could easily find that Von Linsowe, who was promoted at the end of 2020, began the retaliation and instructed others to continue said behavior. Von Linsowe's "toxic" behavior led to the departure of Shauna Willette, a patient access supervisor from January 2020 to July of 2020. (Exhibit C: Full Deposition Transcript of Shauna Willette at 9-10). As noted above, Willette stated

14

Von Linsowe made interactions toxic and would often have arguments with her or otherwise demean her as a fellow supervisor. (Exhibit C at 10-11). With this information and the suspicious timeline of constant registration issues after Ms. Miller's EEOC charge was filed and return from leave, a reasonable juror could find the facts show these actions as adverse, as set forth in the EEOC guidance.

The proverbial trail of breadcrumbs all point to Von Linsowe retaliating against or otherwise harassing Ms. Miller. Von Linsowe lied about the seniority assignment of Renee LaBo to the MOB; she has been called toxic and harassing by Willette, another PAR employee who left Defendant's employ; and her replacement wrote up Plaintiff for issues never before seen in Ms. Miller's records. Defendant's reasons for the discipline are highly suspicious when one considers Ms. Miller's ability to perform in the role was not questioned until after her return to work after leave and after her EEOC filing.

> 2. <u>Plaintiff can show pretext in support of her discrimination and retaliation claims.</u>

Plaintiff has pointed to several inconsistencies in the testimony of Von Linsowe as well as the curious timeline of events presented by Defendant's Investment Tracker. As soon as Ms. Miller began to utilize more of her leave, "complaints" of speed issues began. When that failed, "complaints" of registration issues began after her return from leave and filing of her EEOC charge. The proximity of the events would easily allow a juror to determine the reasons offered

were purely pretextual. This is further supported by the testimony of Willette, a former supervisor, who left due to the toxic and argumentative nature of Von Linsowe.

## **<u>CONCLUSION</u>**

WHEREFORE Plaintiff, Sheryl Miller, respectfully requests that this Honorable Court reconsider its order granting Defendant's Motion for Summary Judgment, and grant such other relief as deemed necessary and appropriate in the Court's discretion.

Dated: June 25, 2023

By:/s/ *CARLA D. AIKENS*
CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
Attorney for Plaintiff
615 Griswold, Ste. 709
Detroit, MI  48226
(844) 835-2993
carla@aikenslawfirm.com

16